**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 08-cv-02248-REB

PAUL CARNEY,

    Applicant,

v.

TRAVIS TRANI Warden, Limon Correctional Facility, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

**ORDER  APPLICATION FOR WRIT OF HABEAS CORPUS
UNDER 28 U.S.C. § 2254**

**BLACKBURN, J.**

Before the court is the *pro se* **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [#2][1] filed by Paul Carney on October 16, 2008. The respondents filed an Answer on February 9, 2009 [#18], and Carney filed a Traverse on March 6, 2009 [#19]. The case has been briefed fully and is ripe for resolution. The court has considered the relevant pleadings, the state court record, and the applicable case law, and is sufficiently advised in the premises. For the reasons set forth below, the court concludes that the application should be denied.

**I. Background and Procedural History**

Carney is challenging his conviction for first degree murder in Adams County, Colorado. The following facts were adduced at the Carney's trial. On November 30,

---

[1] "[#2]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

1

1980, Janice Hood and her roommate, Mary Beth Smollon, went out drinking and to shoot pool at Mitch's, a bar. v. 9 at 57.  They drank for a couple of hours.  *Id.* at 61.  Janice decided to leave the bar to find her boyfriend, Larry Vigil.  *Id.* at 62.  According to Mary Beth, Larry often could be found at the Pine Cone, a biker club bar.  *Id.* at 62-63, 78.

Larry was not at the Pine Cone that night.  Janice spent a lot of time at the bar with Carney, Lavonn Paine, and Toby Jewett.  *Id.* at 88.  They were talking and flirting with Janice.  *Id.* at 103-04.  At closing time, the four of them left the bar.  *Id.* at 105.  They got into Carney's van because Janice wanted a ride.  *Id.* at 169. Paine drove the van, Jewett was in the passenger side, and Carney was in back with Janice.  As they drove around, Carney and Janice engaged in sexual activity.  *Id.* at 173-76.

They parked the van near a bathhouse.  *Id.* at 176.  The four of them continued to drive around again and ended up on a dirt road in a rural area.  *Id.* at 178-80. Carney and Janice had sex again, but then began to argue about bikers and biker clubs.  *Id.* at 181-84.  Carney hit Janice with an open-handed slap a couple of times.  *Id.* at 184.  Carney then dragged Janice out of the van.  He stabbed her with her own knife and left her body on the side of the road. *Id* at 57, 185-86.

Carney got back into the van.  He had a knife and blood on his hands. *Id.* at 187.  As they drove down the road, Carney said to Paine that he should go back and make sure Janice was dead.  *Id.*  When they returned to the body, she was alive and said, "God, I'm already dead, you sons of bitches.  What do you want now?" *Id.* at 190. After Jewett refused to kill Janice, Carney gave the knife to Paine, who then slit Janice's throat. *Id.* at 191.  Janice died of massive blood loss related to the multiple injuries she sustained.  v. 11 at 103-04.

Carney tried to destroy evidence of the murder. He threw Janice's clothes and the knife in a river and burned the mattress that was in the back of the van. v. 9 at 197-99.  Paine and Carney fled the state. *Id.* at 202-05; v.10 at 52-53.  Carney stayed at places all over the country. v. 10 at 78-80.  At one point, after Jewett had spoken to the police, Carney threatened to kill him. *Id.* at 133-34.  The police have never located Paine. *Id.* at 153.  In February 2002, Carney was finally located and arrested in Illinois. *Id.* at 153-54.

Carney was convicted of first degree murder and of being an accessory to the crime of first degree murder.  He was sentenced to life imprisonment.  v. 13 at 16-17; v. 14 at 8.  On direct appeal, Carney raised the following issues: (1) the jury instruction on voluntary intoxication was erroneous; and (2) the trial court violated due process in responding to a jury question outside Carney's presence and coerced the jury to reach a verdict. On March 23, 2006, the Colorado Court of Appeals (CCA) affirmed Carney's convictions. **People v. Carney**, 02CA2585 (Colo. App. Mar. 23, 2006) (unpublished decision) (*Carney 1*).  The Colorado Supreme Court denied Carney's petition for writ of certiorari on November 6, 2006. v. 1 at 122.

On February 27, 2007, Carney filed a motion for post-conviction relief under to Colo. R. Crim. P. 35(c).  He asserted that his trial counsel was ineffective for not objecting to the voluntary intoxication jury instruction and for not presenting exculpatory DNA evidence.  Carney asserted also that, due to a subsequent CCA decision, the jury instruction issue should be revisited. v. 1 at 140.  Carney's 35(c) motion was denied by the District Court on June 13, 2007. v. 1 at 167. That decision was affirmed by the CCA on August 21, 2008. **People v. Carney**, No. 07CA1310 (Colo. App. Aug. 21, 2008) (*Carney II*).

Carney filed the pending Application for Writ of Habeas Corpus on October 16, 2008. After preliminary review, three claims for relief remain: (1) Carney was denied a fair trial because the jury was instructed incorrectly on the voluntary intoxication defense; (2) Carney was denied the effective assistance of counsel because counsel did not object to the voluntary intoxication instruction; and (3) Carney was denied a fair trial when the court responded to a question from the jury outside the presence of Carney and his counsel, and the court's response led to a coercive verdict.

## II. Analysis

A.   Applicant's Status

Carney is proceeding *pro se*. Therefore, the Court must construe his application liberally. **Haines v. Kerner**, 404 U.S. 519, 520-21 (1972); **Hall v. Bellmon**, 935 F.2d 1106, 1110 (10th Cir. 1991). In this regard, the court should carefully weigh the need for Carney to present constitutional claims against any procedural defects caused by Applicant's *pro se* status. **See Clark v. Tansy**, 13 F.3d 1407, 1409 (10th Cir. 1993). However, the court is not the nonmoving party's advocate and must nevertheless deny an application that is based on vague or conclusory allegations. **Hall**, 935 F.2d at 1110.

B.   Standard of Review

Under 28 U.S.C. § 2254(d), an application for writ of habeas corpus may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established Federal law, as determined by the Supreme Court, or (2) involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court." **Williams v. Taylor**, 529 U.S. 362, 404-05 (2000); **see also Trice v. Ward**, 196 F.3d 1151, 1159 (10th Cir. 1999). A decision is contrary to clearly established federal law when it contradicts prior Supreme Court precedent and arrives

4

at a conclusion that is "diametrically different" from that precedent. **Williams**, 529 U.S. at 406. A decision involves an unreasonable application when it utilizes the correct legal principle but reaches an "objectively unreasonable" outcome based on the facts at issue. *Id.* at 409. In addition, a presumption of correctness exists regarding trial and appellate court findings of fact. **Sumner v. Mata**, 455 U.S. 591, 592-93 (1982). Carney bears the burden of rebutting this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); **see Houchin v. Zavaras**, 107 F.3d 1465, 1470 (10th Cir. 1997).

    C. Voluntary Intoxication Jury Instruction

Carney asserts that he was denied a fair trial when the jury was instructed improperly on Carney's defense of voluntary intoxication. Specifically, the jury was instructed to consider evidence of voluntary intoxication only in determining whether it negated the "specific intent" element of first-degree murder. The jury was not told to consider whether voluntary intoxication negated the "after deliberation" element. *Application* [#2] at 5. Carney asserts that this error lowered the prosecution's burden of proof.

"Errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" **Nguyen v. Reynolds**, 131 F.3d 1340, 1357 (10th Cir. 1997) (citations omitted). To obtain relief, a habeas application must demonstrate that the erroneous instruction "by itself so infected the entire trial that the resulting conviction violates due process." **Henderson v. Kibble**, 431 U.S. 145, 154 (1977). A trial court's failure to submit to the jury an element of the criminal offense is subject to harmless error review. **Neder v. United States**, 527 U.S. 1, 8 (1999). Moreover, due to counsel's failure to object in this case, the court is restricted to plain

error review. **Hunter v. State of New Mexico**, 916 F.2d 595, 598 (10th Cir. 1990); *see also* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

The Colorado statute that defines first degree murder provides, in relevant part, that a person commits the crime of murder in the first degree if "after deliberation and with the intent to cause the death of a person . . . he causes the death of that person . . ." §18-3-102(1)(a), C.R.S. The elements of "after deliberation" and "specific intent" both must be present in order to prove first degree murder. **People v. Miller**, 113 P.3d 743, 750 (Colo. 2005). A defendant may offer evidence of voluntary intoxication to negate intent, including the "after deliberation" element. *Id.*

In this case, the jury was instructed that they could "consider evidence of self-induced intoxication in determining whether or not intoxication negates the existence of the culpable mental state of specific intent." v. 1 at 99. In affirming Carney's convictions, the CCA acknowledged that the instructions "did not adequately inform the jury of the potential effect of voluntary intoxication on the 'after[] deliberation' portion of the specific intent required for first degree murder." **Carney I** at 5. However, the CCA found that there was overwhelming evidence that Carney was able to deliberate before committing the murder. *Id.* The CCA cited the following facts to support a finding that Carney committed the murder after deliberation: Carney had an argument with the victim and struck her several times. He dragged her out of the van. After stabbing her, he showed Paine and Jewett the bloody knife. Carney decided to return to Janice's body to ensure that she was dead. He ordered Paine and Jewett to kill her. *Id.* at 5-6. The CCA found that Carney's "actions were calculated." *Id.* at 6. The CCA concluded that the instructional error did not undermine the fundamental fairness of the trial or cast

doubt on the reliability of the conviction.  *Id.*

Carney is not entitled to federal habeas relief on this claim.  "[F]ederal habeas relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Jensen v. Zavaras*, No. 08-cv-01670-RPM, 2010 WL 3835792, at *3 (D. Colo. Sept. 24, 2010) (the effect of voluntary intoxication as a defense is a matter of state law and not a constitutional error). It is not "the province of a federal habeas court to reexamine state-court determinations on state law questions." *Estelle v. Mcguire*, 502 U.S. 62, 67-68 1991).   Moreover, even if the alleged error committed by the trial court was a constitutional one, Carney has not demonstrated that the error had "a substantial and injurious effect in determining the jury's verdict," as required under the plain error standard of review.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).   The CCA's decision on the jury instruction issue is not contrary to, or did not involve an unreasonable application of federal law.  Moreover, the decision is not an unreasonable determination in light of the facts presented in the state court proceeding.  Accordingly, the trial court's failure to offer a proper voluntary intoxication instruction did not deprive Carney of due process of law or a fair trial.

D.  Ineffective Assistance of Counsel

Carney alleges that he was denied his constitutional right to the effective assistance of counsel when trial counsel did not object to the erroneous voluntary intoxication jury instruction and did not offer his own instruction. Under *Strickland v. Washington,* 466 U.S. 668 (1984), to establish ineffectiveness of counsel, Carney must show (1) that his counsel's actions fell below an objective standard of reasonableness, and (2) that the attorney's conduct prejudiced the proceedings such that, but for counsel's errors, the outcome of the proceedings would have been different.  *Id.* at 687.

7

Case 1:08-cv-02248-REB   Document 26   Filed 01/28/11   USDC Colorado   Page 8 of 13


"Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. For counsel's performance to be constitutionally ineffective, "it must have been completely unreasonable, not merely wrong." **Boyd v. Ward**, 179 F.3d 904, 914 (10th Cir. 1999).

In determining prejudice, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." **Strickland**, 466 U.S. at 694. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. The court need not address both prongs of the **Strickland** test. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." **Strickland**, 466 U.S. at 697. The Court need not address both prongs if a habeas applicant fails to make a showing on one of them. **Cooks v. Ward**, 165 F.3d 1283, 1292-93 (10th Cir. 1998).

Carney cannot sustain his ineffectiveness claim because he cannot demonstrate prejudice. The evidence against Carney was overwhelming. The trial testimony proved that on the date of the murder, Carney, Paine, and Jewett spent the entire day drinking. They went into a bar and met Janice, the victim. They left the bar and drove around. Carney and Janice got into an argument. He dragged her out of the van. Carney stabbed her and left her body by the side of the road. The three men drove away from the scene. Carney said he should go back and find out if Janice was really dead. When they got back, Janice was still alive. Carney told Paine to kill her. Paine slit her

throat.  Carney attempted to destroy evidence of his crime, including Janice's clothing, the murder weapon, and the mattress that had been in the back of the van. He fled the state of Colorado and was not located until twenty-two years after the crime was committed.

Based on this evidence, it is clear that Carney is guilty of the offenses charged. Accordingly, Carney suffered no prejudice from counsel's alleged error.  Absent prejudice, counsel is not ineffective if he fails to request or object to a specific jury instruction.  **See United States v. Gabaldon**, 361 Fed. Appx. 930, 933 (10th Cir. 2010).   The ineffective assistance of counsel claim is without merit.

    E.  Jury Question

        1. Presence

Applicant asserts that he was denied a fair trial because the judge answered a jury question without Carney or his counsel being present.  He contends also that the judge's answer to the question was coercive.

During its deliberations, the jury sent a question to the judge: "We are unable to reach a unanimous verdict.  We are dead locked [sic] 11 to 1.  Where do we go if the one juror will not share his reasons[.]" The court responded, "Please continue your deliberations." v. 1 at 109.  Neither counsel was present at the time.  Given these circumstances, the CCA concluded that the trial court erred in responding to the jury's questions without the presence of Carney and his counsel. *Carney I* at 7.  However, because the judge's response was appropriate and not coercive, and despite the absence of Carney and his counsel, the CCA concluded that the court's response was harmless beyond a reasonable doubt. *Id*. at 10.

Under the Sixth and Fourteenth Amendments of the Constitution, a criminal

defendant has the right to be personally present at all critical stages of his trial. "[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the proceeding." **Kentucky v. Stincer**, 482 U.S. 730, 745 (1987); **Rushen v. Spain**, 464 U.S. 114, 117 (1983); **Illinois v. Allen**, 397 U.S. 337, 338 (1970).  However, where a defendant's presence would be "useless" or "the benefit but a shadow" his presence is not required.  **Stincer**, 482 U.S. at 745; **Bland v. Sirmons**, 459 F.3d 999, 1021 (10th Cir. 2006).

"A question from the jury must be answered in open court" and only after giving the defense "an opportunity to be heard." **United States v. Carter**, 973 F.2d 1509, 1515 (10th Cir. 1992). However, a criminal defendant does not have a constitutional right "to be present at every interaction between the trial judge and a juror." **United States v. Santiago**, 977 F.2d 517, 522 (10th Cir. 1993); **see also Esnault v. Colorado**, 980 F2d 1335, 1337 (10th Cir.1992) (there is no due process right to be present when counsel and the court meet on a jury question).   The mere occurrence of an *ex parte* communication between a judge and a juror does not constitute a deprivation of a constitutional right.  **United States v. Gagnon**, 470 U.S. 522 , 526 (1985).

An *ex parte* communication between the judge and a juror is presumptively prejudicial. **United States v. Scisum**, 32 F.3d 1479, 1482 (10th Cir. 1994).[2]  The presumption is not conclusive.  If there was an improper *ex parte* communication between the court and a juror, the Court should presume prejudice unless the

---

[2] The Tenth Circuit, in a later case, held that courts should not presume prejudice from an *ex parte* conversation. **See Crease v. McKune**, 189 F.3d 1188, 1193 (10th Cir. 1999).  The decision did not overrule **Scisum**.  Instead, the court said the case was limited to direct federal appeals.  The Court concluded that a different standard applies in federal habeas because of the deference owed state courts. *Id.* at 1193-1194.

10

―

prosecution shows that the communication did not prejudice the substantial rights of defendant. **United States v. McDonald**, 933 F2d 1519, 1524 (10th Cir. 1991).  This trial error is subject to a harmless error analysis.  **Remmer v. United States**, 347 U.S. 227, 229 (1954).  Under this standard, the Court "will reverse a resulting conviction only if the court's error was not harmless - that is, if it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." **United States v. Roach**, 582 F.3d 1192, 1207 (10th Cir. 2010) (citation omitted).  As the CCA concluded, whether the Applicant's lack of presence during the jury question was harmless depends on the nature of the judge's response to the jury's question." **Carney I** at 8.

2. Answer to Jury's Question

Carney alleges that he was denied a fair trial due to the coercive instruction given by the judge to the jury. The jury had informed the court that they could not reach an unanimous decision and were deadlocked at 11 to 1.  The judge instructed them: "Please continue your deliberations."  v. 1 at 109.  The CCA concluded that the court's response was not coercive and despite the fact that Carney was not present, the response to the jury question was harmless beyond a reasonable doubt. **Carney I** at 10.

"Errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" **Nguyen v. Reynolds**, 131 F.3d 1340, 1357 (10th Cir. 1997) (citations omitted).   To obtain relief, a habeas applicant must demonstrate that the erroneous instruction "by itself so infected the entire trial that the resulting conviction violates due process." **Henderson v. Kibble**, 431 U.S. 145, 154 (1977).  The issue here is whether the court's supplemental instruction to the jury

11

improperly coerced a verdict.

In *Allen v. United States*, 164 U.S. 492 (1896), the Supreme Court upheld the giving of a supplemental instruction to a jury that cannot reach a decision. An *Allen* instruction tells the jury "that absolute certainty cannot be expected in the vast majority of cases, that they have a duty to reach a unanimous verdict if they can conscientiously do so, and that dissenting jury members should accord some weight to the fact that a majority of jurors hold an opposing viewpoint." *United States v. Zabriskie*, 415 F.3d 1139, 1147 (10th Cir. 2005). The Tenth Circuit also has approved a modified-*Allen* charge, which instructs each juror, rather than just those in the minority, to carefully reconsider their views and "give respectful consideration to each other's views and talk over any differences of opinion in the spirit of fairness and candor." *Gilbert v. Mullin*, 302 F.3d 1166, 1174 (10th Cir. 2002) (citation omitted). The court has noted that such a charge is not coercive. *Id.*

The Tenth Circuit routinely has approved supplemental *Allen* instructions during jury deliberations. *Id.*; *see United States v. Arney,* 248 F.3d 984, 989 (10th Cir. 2001) (collecting cases). The instruction given at Carney's trial is certainly less coercive than the constitutionally approved *Allen* charge. An instruction to continue deliberations does not amount to coercion. *Montoya v. Scott*, 65 F.3d 405, 414 (5th Cir. 1995); *Darks v. Mullin*, 327 F.3d 1001, 1014 (10th Cir. 2003); *United States v. Duran-Salazar*, 123 Fed. Appx. 946, 950 (10th Cir. 2005). When "a neutrally phrased supplemental instruction is directed at all jurors rather than to those holding a minority view, and encourages them to continue deliberations, it reduces the possibility of coercion." *Darks*, 327 F.3d at 1014.

In this case, the supplemental instruction given by the trial judge was not

coercive. The instruction merely encouraged the jury to continue to deliberate and such encouragement is not coercive. Therefore, the supplemental instruction did not violate Carney's right to due process or deny him a fair trial. Carney was not denied the effective assistance of counsel. Moreover, the court's error in addressing the jury without Applicant's presence was harmless beyond a reasonable doubt.

### III. Conclusion & Orders

For the reasons detailed above, the court finds that no evidentiary hearing is required in this case and that Carney is not entitled to relief under 28 U.S.C. § 2254.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [#2] filed October 16, 2008, is **DENIED**;

2. That this case is **DISMISSED WITH PREJUDICE**; and

3. That there is no basis on which to issue a certificate of appealability under 28 U.S.C. § 2253(c).

Dated January 28, 2011, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge